UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MYA H.,

    Plaintiff,

v.

ATHENA BITCOIN ATM; NEW JERSEY DEPARTMENT OF TREASURY; UNITED STATES MARSHALLS SERVICE; PRINCETON POLICE DEPARTMENT,

    Defendants.

Civil Action No. 23-21905 (RK) (RLS)

**MEMORANDUM OPINION**

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court on a Motion to Dismiss filed by Defendant New Jersey Department of Treasury ("Treasury").[1] (ECF No. 7.) *Pro se* plaintiff Mya H. ("Plaintiff")[2] opposed, (ECF No. 8), Treasury replied, (ECF No. 9), and Plaintiff responded, (ECF Nos. 10, 11).[3] The Court has carefully considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78 and Local Civil Rule 78.1. For the reasons set forth below, Treasury's Motion to Dismiss (ECF No. 7) is **GRANTED**.

---

[1] Treasury is the only Defendant to appear so far in this action. The remaining Defendants are the U.S. Marshals Service, the Princeton Police Department, and Athena Bitcoin ATM.

[2] The Court notes Plaintiff's Motion to Seal, (ECF No. 12), is currently pending. Accordingly, during the pendency of that Motion, the Court refers to Plaintiff only by her first name and last initial.

[3] Pursuant to Local Civil Rule 7.1, sur-replies are not permitted absent Court permission. Plaintiff did not receive same; however, given Plaintiff's *pro se* status, the Court will accept these submissions.

I.      **BACKGROUND**

*Pro se* plaintiff Mya H. was the victim of a phone-based scam. ("Compl.," ECF No. 1, "Addendum," ECF No. 4.)[4] On October 6, 2023, Plaintiff, a resident of New Jersey, received a telephone call from a person identifying herself as Fedora Campbell ("Campbell")[5], an officer of the U.S. Marshalls Service. (Compl. at 3; Addendum at 1.)[6] Campbell told Plaintiff that authorities intercepted a package in Plaintiff's name at the border between Texas and Mexico. (Compl. at 3.) This package allegedly contained fake documents, $10,000, and proof of bank accounts in Plaintiff's name at several financial institutions. (*Id.*) Campbell then transferred Plaintiff to a man who identified himself as William Wayne, a New Jersey Department of Treasury employee. (*Id.*) The transferred call showed the number (609) 292-6748, which Plaintiff contends is the correct number for Treasury. (*Id.*) Both callers provided Plaintiff with badge numbers and an identifying case number. (*Id.*)

Wayne instructed Plaintiff she had two ways to "clear [her] name": (1) undergo a full investigation, which risked Plaintiff's bank accounts being shut down until the investigation ran its course or, (2) participate in what Wayne called an "Alternative dispute resolution" ("ADR") procedure online. (Addendum at 1.) Wayne told Plaintiff the ADR procedure meant she would not "have to hire [a] criminal lawyer or surrender." (Compl. at 3.) To participate in the ADR procedure, Wayne instructed Plaintiff to go to her bank; withdraw 80% of the funds in her account in cash; get a receipt to provide to Treasury; go to a "government-approved machine" and deposit the funds

---

[4] Plaintiff has submitted a Complaint (ECF No. 1) and an addendum to her Complaint (ECF No. 4). The Court will treat them as one unified claim for the purposes of this Opinion given Plaintiff's *pro se* status. The Court takes all facts as alleged from these documents. (ECF Nos. 1 and 4.)

[5] Plaintiff alternatively spells the caller's name as "Cambell." (ECF No. 1 at 3.)

[6] Page numbers (i.e., "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

there. (Addendum at 1.) Plaintiff believed that after she deposited the funds, "[Federal Bureau of Investigations ("FBI")] officers would come to [her] address and clear [her] of the investigation." (*Id.*) Wayne told Plaintiff to stay on the phone with him as she completed these tasks, and threatened that if she told others what was happening the Government "would have to seize those people's accounts as well." (*Id.*)

Plaintiff followed instructions and arrived at 3732 Quakerbridge Rd, where she was instructed to wait for a call from "the US Government." (*Id.* at 2.) She followed instructions from a new female caller to deposit the withdrawn funds in an Athena Bitcoin ATM. (*Id.*) Plaintiff did so and sent a photograph of the receipt, including an image of a QR code, to a phone number received from the scammers. (*Id.*) Plaintiff then received another call from Wayne, who instructed her that she was "cleared from the investigation" and should expect to hear from government officers at her home in New Jersey. (*Id.*) When those officers did not arrive at the time promised, Plaintiff realized that she was the victim of a scam. (*Id.*)

Plaintiff attempted to call back the numbers she had spoken with earlier in the day and reached the legitimate offices of the FBI and New Jersey Department of Treasury. (*Id.*) The FBI agent Plaintiff spoke with informed her that she had been scammed. (*Id.*) Later that day, Plaintiff received another call from someone identifying themselves as Eric Brown ("Brown"), an employee of the U.S. Department of Treasury. (*Id.*) Brown told Plaintiff to take out the remaining money from her bank account and threatened her with arrest if she refused. (*Id.*) Plaintiff did not believe Brown's threats, hung up on him, and ignored his follow up call. (*Id.*) The following day, Plaintiff returned to the Athena Bitcoin ATM and asked the Princeton Police Department ("PPD") to impound the ATM. (Compl. at 3.) PPD refused. (*Id.*) Plaintiff filed a police report with the Edison Police Department that same day. (*Id.*)

## II.     LEGAL STANDARD

### a.  Federal Rule of Civil Procedure (12)(b)(1)

Under Rule 12(b)(1), a defendant may move to dismiss based on a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). In deciding a Rule 12(b)(1) motion to dismiss, a court must first determine whether the party presents a facial or factual attack because that distinction determines how the pleading is reviewed. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). "A facial attack concerns an alleged pleading deficiency whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *Young v. United States*, 152 F. Supp. 3d 337, 345 (D.N.J. 2015) (citation and quotation marks omitted).

Prior to filing an answer, a defendant's motion to dismiss is considered a facial attack. *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (defendant's motion was a "facial attack" because it "filed the attack before it filed any answer to the Complaint or otherwise presented competing facts"); *Curlin Med. Inc. v. ACTA Med., LLC*, No. 16-2464, 2016 WL 6403131, at *2 (D.N.J. Oct. 27, 2016) ("[T]he Third Circuit's recent cases suggest that only facial attacks, and not factual attacks, can be brought in a motion to dismiss before an answer is filed.").

Here, because Treasury has filed its Motion to Dismiss prior to answering the Complaint, the Court will construe the Rule 12(b)(1) motion as a facial attack. Accordingly, "the court must only consider the allegations of the complaint and documents referenced therein . . . in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). On this posture, a court presumes that it lacks subject matter jurisdiction, and "the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life*

*Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) (when jurisdiction is challenged under Rule 12(b)(1), the plaintiff bears the burden of persuasion).

### b. Federal Rule of Civil Procedure (12)(b)(6)

Under Federal Rule of Civil Procedure (12)(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." R. 12(b)(6). For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008); *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 406 (D.N.J. 2018). "A pleading that offers labels and conclusions or a formulistic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted). It is well established that a *pro se* complaint "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Montgomery v. Pinchak*, 294 F.3d 492, 500 (3d Cir. 2002) (internal quotation marks and citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court is obligated to construe *pro se* claims liberally and afford *pro se* plaintiffs the benefit of every doubt. *Alexander v. Gennarini*, 144 F. App'x 924, 926 (3d Cir. 2005).

### III. <u>DISCUSSION</u>

The Motion to Dismiss is based on four grounds: (1) Defendant Treasury is entitled to Eleventh Amendment sovereign immunity, and (2) Plaintiff failed to state a claim; (3) any claims

under § 1983 for monetary damages should be dismissed because Treasury is not a "person" subject to suit under the statute; and (4) any claims Plaintiff makes for injunctive relief against Treasury should be dismissed because Plaintiff lacks standing. (ECF No. 7-3 at 11–20.) Because jurisdiction is the threshold issue, the Court will first consider whether Plaintiff has met her burden of establishing this Court's jurisdiction.

### a. Federal Rule of Civil Procedure 12(b)(1) – Sovereign Immunity

Treasury argues that Plaintiff's claims should be dismissed under the doctrine of sovereign immunity. (ECF No. 7-3 at 15–16.)[7] "[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996). This Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Sovereign immunity under "the Eleventh Amendment does not permit a damages action against a state in federal court." *Dukes v. New Jersey Transit Corp.*, No. 16-08947, 2018 WL 1378726, at *5 (D.N.J. Mar. 19, 2018). Not only has this amendment "'been interpreted to make states generally immune from suit by private parties in federal court,'" this protection "'extends to state agencies and departments.'" *Perez v. New Jersey*, No. 14-4610, 2015 WL 4394229, at *4 (D.N.J. July 15, 2015) (quoting *MCI Telecomm. Corp. v. Bell Atlantic Pa.*, 271 F.3d 491, 503 (3d Cir.2001)). Unless a party waives its sovereign immunity, "a court is without

---

[7] Plaintiff's opposition filings do not meaningfully contest the merits of Defendant's Motion; Plaintiff instead discusses the facts underlying her suit and makes a policy argument against sovereign immunity under the Eleventh Amendment. (ECF Nos. 8, 10 and 11.)

subject matter jurisdiction over claims against . . . agencies or officials in their official capacities." *Treasurer of New Jersey v. U.S. Dep't of Treasury*, 684 F.3d 382, 395 (3d Cir. 2012).[8]

To determine whether an "entity is properly characterized as an arm of the state" and thus entitled to sovereign immunity, courts in the Third Circuit have applied a three-factor test: "(1) whether the payment of the judgment would come from the state; (2) what status the entity has under state law; and (3) what degree of autonomy the entity has." *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 546 (3d Cir. 2007). Courts applying this test have held that Treasury is an arm of the state. *Pacheco v. Dep't of Treasury*, Civ. No. 18-1615, 2020 WL 7029485, at *2 (D.N.J. June 29, 2020) (finding the Treasury Department is "clearly" an "arm[] of the state for immunity purposes"); *May v. Irvington Police Dep't*, Civ. No. 15-764, 2016 WL 236212, at *2 (D.N.J. Jan. 19, 2016) ("There is no real dispute that . . . New Jersey Department of Treasury [is] entitled to immunity due to [its] status as [a] state department[]"). Therefore, as an arm of New Jersey, Treasury is entitled to sovereign immunity, and the Court lacks jurisdiction to hear this dispute. *See Jentis v. New Jersey*, Civ No. 18-09467, 2023 WL 2570217, at *3 (D.N.J. Mar. 20, 2023).[9]

---

[8] "A waiver of sovereign immunity must be express and unambiguous to confer subject matter jurisdiction on a court." *Treasurer of New Jersey*, 684 F.3d at 396. Here, Plaintiff does not argue that Treasury waived its sovereign immunity, and Defendant's brief, arguing for dismissal on that basis, does not otherwise suggest waiver.

[9] Further, to the extent Plaintiff asserts 42 U.S.C. § 1983 claims against Treasury, these claims must be dismissed as well. § 1983 permits claims against any "person, who under color of any statute . . . subjects or causes to be subjected . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" 42 U.S.C. § 1983. However, Treasury is not "recognized as [a] 'person[]' under § 1983." *Hogg's v. New Jersey*, 352 F. App'x 625, 628 (3d Cir. 2009) (affirming the district court's dismissal of defendants because New Jersey and its agencies are not recognized as "persons" under § 1983).

### b. Federal Rule of Civil Procedure 12(b)(6) – Failure to State a Claim

Even if the Court were to exercise jurisdiction over this case, the Court nonetheless finds that Plaintiff's claims against Treasury fail. Although a *pro se* plaintiff's complaint is held to less stringent standards than one drafted by an attorney, a plaintiff's claims must also be supported by "a short and plain statement . . . showing that the pleader is entitled to relief." R. 8(a)(2). Rule 8 further requires that the Complaint's allegations are "simple, concise, and direct." R. 8(d). Although Rule 8's requirements likewise apply "flexibl[y]" to a *pro se* plaintiff, *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013), a plaintiff is "not absolved from complying with *Twombly* and the federal pleading requirements merely because [she] proceeds *pro se*." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted). Plaintiff's Complaint does not pass muster under Rule 8(a).

Broadly, the Complaint fails to adhere to the "'plain' statement requirement, which prompts [the Court] to ask whether, liberally construed, a pleading 'identifies discrete defendants and the actions taken by these defendants' in regard to the plaintiff's claims." *Garrett v. Wexford Health*, 938 F.3d 69, 93 (3d Cir. 2019) (quoting *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019)).

The Court construes Plaintiff's Complaint as asserting fraud and negligence claims against Treasury. (Addendum at 2.) The Court's analysis of each is below.

### 1. Fraud

In order to state a claim for fraud in New Jersey, a plaintiff must establish the following five elements: "'(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'" *Hous. Auth. of City*

*of Bayonne v. Hanna*, No. A-0788-10T2, 2011 WL 5828521, at *3 (N.J. Super. Ct. App. Div. Nov. 21, 2011) (quoting *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997)). Moreover, for allegations sounding in fraud, Rule 9(b) imposes a heightened pleading standard: a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." R. 9(b). A plaintiff must plead fraud with sufficient particularity to put the defendant on notice of the "precise misconduct with which [he is] charged." *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004), abrogated in part on other grounds by *Twombly*, 550 U.S. at 557. The Court finds that Plaintiff has not alleged fraud with any semblance of specificity as required under Federal Rule 9(b).

A claim must be facially plausible to survive dismissal under Rule 12(b)(6), meaning the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. There are no facts in the record showing Treasury had knowledge of, or participated in, the fraud perpetrated against Plaintiff. Plaintiff's claim acknowledges that "fraudsters" used Treasury's name to commit their crime, and does not allege that Treasury itself defrauded her, was in any way involved in same, or in even cognizant of the scheme. (Addendum at 2.)[10]

Plaintiff's Complaint only alleges actions by third party scammers and does not allege any actions by Treasury or its employees. As such, Plaintiff does not allege sufficient facts to prove any of the required five elements to find fraud. Therefore, the fraud claims against Treasury must be dismissed. *See Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (finding the "mere possibility of misconduct" does not show that the "pleader is entitled to relief" under Rule 8(a)(2) (internal citation omitted)).

---

[10] It is not clear to the Court if Plaintiff believes Wayne is an employee of Treasury. (ECF No. 8 at 1.) However, Plaintiff has not brought a claim against Wayne in this action, and there are no facts in the record that suggest he was anything more than a scammer spoofing a government phone number, which Plaintiff alternately appears to concede. (Addendum at 2.)

## 2. Negligence and Duty of Care

Plaintiff also alleges negligence on Treasury's part, stating "[d]ue diligence was lacking allowing fraudsters to use the Departments [sic] name and telephone number[] [a]llowing fraudsters to use them for fraudulent means." (Addendum at 2.)[11] Plaintiff's Complaint alleges she was defrauded via call spoofing, which falsifies the information on a telephone's caller ID display. (Addendum at 2; ECF No. 9 at 2 (citing *Perrong v. Caller Identified as Connor*, Civ. No. 22-4479, 2023 WL 113957 (D.N.J. Jan. 4, 2023).)[12] Plaintiff essentially argues that Treasury owed her, and others like her, a duty of care and that it has a duty to stop scammers from (1) identifying themselves as employees of Treasury and (2) spoofing Treasury's phone number.

The Supreme Court of New Jersey has held "[t]he fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages." *Robinson v. Vivirito*, 217 N.J. 199, 208 (2014) (citing *Jersey Cent. Power & Light Co. v. Melcar Util. Co.*, 212

---

[11] Treasury's motion construed Plaintiff's claim as one of negligent misrepresentation, rather than negligence. (ECF No. 7-3 at 13–14.) A claim for negligent misrepresentation requires (1) an incorrect statement, (2) that the statement was made negligently, (3) the statement was justifiably relied upon and (4) that damages were caused by reliance on the incorrect statement. *Sani-Pure Food Lab'ys, LLC v. bioMerieux, Inc.*, Civ. No. 13-6643, 2014 WL 6386803, at *5 (D.N.J. Nov. 13, 2014) (citing *McClellan v. Feit*, 870 A.2d 644, 650 (N.J.Super.Ct.App.Div.2005)). To the extent Plaintiff brings a claim for negligent misrepresentation rather than negligence, the Court agrees with Treasury's argument that Plaintiff does not allege facts satisfying the elements of the claim. Plaintiff appears to concede that Wayne was, in fact, not an employee of Treasury, and therefore does not allege Treasury or any officials from Treasury made a negligently incorrect statement that was relied upon. (ECF No. 10 at 2.)

[12] Call spoofing is experiencing a significant boom with new technologies that allow scammers to "use telecommunication technology to mask themselves and escape liability by hiding their identities." Katherine Teng, *Unmasking the Villain: Exposing Scammers' Identities to Defeat Harmful Calls*, 14 Brook. J. Corp. Fin. & Com. L. 367, 367 (2020). "Spoofing calls are one of the biggest problems in regulating unwanted calls, since spoofing makes these callers harder to detect. Spoofing is also incredibly dangerous, since it allows scammers to use phone numbers familiar to consumers, thus making consumers more vulnerable to scams." *Id.* Government agencies tasked with enforcing laws against fraud and regulating call spoofing have faced significant challenges as technology continues to evolve and scammers set up elaborate structures to avoid regulation. *Id.*; *see also United States v. Palumbo*, 448 F. Supp. 3d 257, 267 (E.D.N.Y. 2020) (detailing the intricacies of one Government enforcement against a telecommunications fraud actor).

N.J. 576, 594 (2013)). "Courts consider several factors when determining whether a duty of care is owed: fairness and public policy; foreseeability; the relationship between the parties; the nature of the conduct at issue; and the ability to alter behavior to avoid injury to another." *G.A.-H. v. K.G.G.*, 238 N.J. 401, 414 (2019) (internal citation omitted); *see also Robinson*, 217 N.J. at 208 ("The determination of the existence of a duty of care to avoid harm to another is ultimately governed by fairness and public policy.") (citing *Carvalho v. Toll Bros. & Devs.*, 143 N.J. 565, 572 (1996)).

The New Jersey Supreme Court has explained that "[b]ecause [p]ublic policy must be determined in the context of contemporary circumstances and considerations, duty of care is a malleable concept that must of necessity adjust to the changing social relations and exigencies and man's relation to his fellows." *G.A.-H.*, 238 N.J. at 414 (internal citations and quotation marks omitted). The New Jersey Supreme Court, however, has cautioned that:

> [A]s a background principle, the law of torts declines to impose a duty of care upon [a]n actor whose conduct has not created a risk of physical or emotional harm to another. . . Accordingly, when the duty at issue relates to the risk of harm created by a third party, the plaintiff must prove that the defendant knew or had reason to know of the risk of harm in question.

*Id.* at 415 (internal citations and quotation marks omitted).

In the facts as alleged, Treasury is an innocent third party who cannot be held liable for the actions of unrelated scammers. *See G.A.-H.*, 238 N.J.at 415 (declining to apply duty of care to an innocent actor who has not created a risk of harm); *see also Robinson*, 217 N.J. at 213 (finding no negligence where injury happened in a circumstance where leadership "had no ability to monitor conduct" or alter behaviors of either the victim or perpetrator). Plaintiff has not alleged any facts that would support her claim that Treasury was negligent, other than the fact that she was scammed by criminals falsely using Treasury's information. That is not enough to sustain a negligence claim

when Treasury neither knew nor had reason to know of the risk of harm to Plaintiff, has no relationship to Plaintiff, and cannot be reasonably expected to alter the behavior of the scammers. *See Citizens Bank of Pennsylvania v. Reimbursement Techs., Inc.*, 609 F. App'x 88, 92 (3d Cir. 2015) (lack of a relationship is a significant factor that weighs against the existence of a common law duty of care); *Hines v. Lanigan*, No. 17-2864, 2021 WL 5150148, at *2 (D.N.J. Nov. 5, 2021) (dismissing a negligence claim where there were not sufficient facts regarding the relationship between the parties and not enough for the Court to reasonably infer a breach of duty of care); *Bergen Beverage Distributors LCC v. E. Distributors, Inc.*, Civ. No. 17-04735, 2022 WL 833373, at *10 (D.N.J. Mar. 21, 2022) (finding a duty of care exists when an actor creates an unreasonable risk of foreseeable harm or when such a duty is judicially imposed by policy and fairness considerations).

In this case, Plaintiff has failed to establish that Treasury owed any duty to Plaintiff; breached a duty; or proximately caused any damages.[13] Treasury, on the facts alleged, cannot be liable for the actions of third-party scammers who unfortunately duped Plaintiff into this fraudulent scheme causing financial loss, personal anguish, and embarrassment. Accordingly, the Court does not have jurisdiction over Treasury due to the sovereign immunity conferred to it under the Eleventh Amendment. In addition, dismissal here is warranted regardless of its exercise of jurisdiction under Rule 12(b)(6) for failure to state a claim.

---

[13] The Court finds it unnecessary to consider whether Plaintiff has failed to demonstrate standing for injunctive relief, as all claims against Treasury are dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendant Treasury's Motion to Dismiss is **GRANTED**, and Plaintiff's claims against Treasury are hereby **DISMISSED** without prejudice. Plaintiff may file an amended complaint that cures the deficiencies identified in this Opinion within forty-five (45) of the date of this Opinion. An appropriate Order accompanies this Opinion.

                                                                              _____
                                                                              ROBERT KIRSCH
                                                                              UNITED STATES DISTRICT JUDGE

<u>Dated</u>: May 1, 2024